IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON PRINCE, | } | |
| Plaintiff, | } | CIVIL ACTION NO. |
| v. | } | 99-AR-1583-S |
| BIRMINGHAM BOARD OF EDUCATION, | } | |
| Defendant. | } | |

ENTERED
AUG - 4 2000

### MEMORANDUM OPINION

Before the court is a motion for summary judgment filed by defendant, Birmingham Board of Education ("Board"). The motion seeks judgment as a matter of law on claims by plaintiff, Sharon D. Prince ("Prince"). Prince claims that the Board, when it selected Ralph Louis ("Louis") for the position of interim locksmith instead of Prince, violated Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq* ("Title VII"). In addition, the Board's motion seeks judgment as a matter of law on Prince's claims under Title IX, the Education Act Amendments of 1972, 20 U.S.C. §§ 1681 *et seq* ("Title IX"). Prince's Title IX claim is based on the same set of facts as her Title VII claim. For the reasons set



forth below, defendant's motion is due to be granted as to both Title VII and Title IX claims.

## BACKGROUND

Prince was originally hired by the Board as a bus driver. She was promoted, along with Ralph Louis ("Louis"), to the position of maintenance helper on September 15, 1993. Maintenance helpers are assigned each day to different craftsman in the school maintenance departments, depending on the needs at the time. In 1994 or 1995, Prince and Louis were both permanently assigned to specific locksmiths as locksmith helpers. Prince was assigned to Allan Moore, and Louis was assigned to Dewey Franklin ("Franklin").

Shortly after Prince and Louis received these permanent assignments, Franklin, the locksmith to whom Louis was assigned, was pulled away from his locksmith duties and reassigned to the asbestos department to cover a shortage of manpower there. This reassignment of Franklin was understood by all at the time to be temporary. Louis, the locksmith helper assigned to Franklin, filled in for Franklin, and covered Franklin's territory and performed the duties of a full locksmith. Louis filled in for Franklin for over a year, covering the territory on his own without a helper, with the job title and pay scale of locksmith helper.

2

Prince became aware in 1995 Franklin had been transferred, and that Louis was filling in for Franklin, performing all the duties of a full locksmith.  Prince did not complain at that time that she should be the one to fill in for Franklin and be allowed to perform the duties of a full locksmith for the salary of a locksmith helper.

Toward the end of 1996, Louis began to complain to his supervisors, arguing that because he was performing the duties of a locksmith, and doing so without a helper, he should receive the pay of a full locksmith, at least until Franklin returned.  Louis's supervisors agreed.  In September of 1996, Louis began to receive full locksmith pay on an interim basis, with the understanding that his pay would revert to the pay of locksmith helper once Franklin returned.

In December of 1996, Prince verbally complained to Dr. Wayman Shriver, the executive assistant to the superintendent of schools and Prince's senior supervisor, about the fact that Louis was receiving full locksmith pay.  Prince argued that she had several months seniority over Louis, and if anyone should have been given the position of interim locksmith while Franklin was absent, it should have been her.  Prince did not file a written complaint complaining of gender discrimination.  In fact, she made no

complaint in writing.  Dr. Shriver made a preliminary investigation into the matter and, after discovering that Louis had already been satisfactorily performing the duties of locksmith for over a year without any extra pay, determined that it had been appropriate that Louis was the one to receive the interim locksmith position in the territory Louis already knew.  Had the interim locksmith position been given to Prince, the personnel transition would have involved three steps: 1) demoting Louis back down to locksmith helper under Prince's supervision, 2) transferring Prince to a position as Louis's supervisor, and 3) replacing Prince in her position as locksmith helper for the territory in which she was working.

Prince filed her EEOC charge in March of 1997.  She claimed that she was passed over for a promotion that she deserved, and that the promotion was given instead to a less qualified male.  The EEOC agreed with her, determining that "evidence obtained during the investigation establishes reasonable cause to believe that [Prince] was discriminated against in violation of Title VII by being denied the promotion/assignment to the position of locksmith.  The evidence shows that [Prince] was the most senior locksmith helper and was more experienced than the employee promoted/assigned to the position of locksmith."

In October of 1997, both Prince and Louis were promoted on a

4

permanent basis to the position of full locksmith by the Board, a position they both now hold. Prince received her right to sue letter from the EEOC in March of 1999, and filed this suit in June of 1999.

## Discussion

### Title IX Claim

Prince argues that because the Board receives federal funds, it is appropriate for her to bring claims of disparate treatment based on sex under Title IX as well as Title VII. As Prince puts it:

> [D]ue to the different damages available under the respective statutes . . . it is proper for [Prince] to maintain causes of action under both statutes. It is not unlike a plaintiff in a race case asserting claims under both Title VII and § 1981.

The Eleventh Circuit has not addressed this question, and there is a split in the circuits which have addressed it. Although other courts have not made the same comparison to § 1981 used by Prince, some other courts have agreed that a cause of action may be brought under both Title IX and Title VII, even when each claim is based on the same set of facts. The district court for the District of Rhode Island summed up the divergence of views:

5

> [T]his court agrees with those courts which predictively view the Supreme Court's "next logical step" as being to recognize a private cause of action under Title IX for employment discrimination against a federally funded education program. *Bowers v. Baylor Univ.*, 862 F.Supp. 142, 145 (W.D. Tex.1994); see *Preston v. Commonwealth of Virginia ex rel. New River Community College*, 31 F.3d 203, 205- 06 (4th Cir.1994); *Nelson v. Univ. of Maine Sys.*, 923 F.Supp. 275, 278-79 (D. Me.1996). This position is by no means unanimous. Other courts have argued that to read a private cause of action for employment discrimination into Title IX would disrupt the "carefully balanced remedial scheme for redressing" such grievances as mandated by Congress through Title VII. *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir.1995); see *Cooper v. Gustavus Adolphus College*, 957 F.Supp. 191, 193 (D. Minn.1997); *Howard v. Bd. of Educ. of Sycamore Community Unit Sch. Dist.*, 893 F.Supp. 808, 815 (N.D. Ill.1995); *Wedding v. Univ. of Toledo*, 862 F.Supp. 201, 203-04 (N.D. Ohio 1994).

*Bedard V. Roger Williams University*, 989 F.Supp. 94, 97 (D.R.I. 1997).

In a case decided in December of 1999, Judge DeMent of the Middle District of Alabama sided with the Fifth and Seventh Circuits and against Prince on this issue. Judge DeMent stated:

> We are not persuaded that Congress intended that Title IX offer a bypass of the remedial process of Title VII. We hold that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions. . . . This court agrees with those courts finding that Title VII preempts employment discrimination claims for money damages brought under Title IX. To hold otherwise would eviscerate Title VII's technical and administrative requirements, thereby giving plaintiffs who work at federally funded educational institutions unfettered ability to bring what are in reality Title VII

6

sexual discrimination claims without adhering to the same rules required of every other employment discrimination plaintiff in the country.

Blalock v. Dale County Board of Education, 84 F.Supp.2d 1291, 1298 (M.D. Ala 1999).

This court is persuaded by this reasoning, and agrees with Judge DeMent. Accordingly, the court finds that Prince's claim for employment discrimination based on sex may properly be brought only under Title VII, and the claim brought under Title IX is due to be dismissed.

Title VII Claim

The *McDonnell-Douglas*[1] burden-shifting test provides the structure for analysis of Prince's Title VII claim. Prince must first make a *prima facie* case of discrimination.[2] If she can make her *prima facie* case, the Board must respond with a legitimate, non-discriminatory explanation for its actions. Prince must then attempt to show that the explanation offered by the Board is a pretext for gender discrimination.

To establish her *prima facie* case that she was unfairly passed

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[2] There are a number of variations of the *prima facie* case under the *McDonnell-Douglas* test, depending on whether the issue at hand is about hiring, or promotion, pay, termination, etc. But the central point in all is that the plaintiff must show that a similarly situated individual received better treatment when compared to the plaintiff, and that the plaintiff is a qualified member of a protected class.

over for a promotion because of her sex, Prince must first establish that a promotion occurred in the first instance. The court doubts that Prince can make that showing. Prince and Louis were assigned as locksmith helpers to their respective locksmiths, responsible for different geographic areas. Franklin (the locksmith to whom Louis was assigned), was temporarily reassigned to the asbestos department. Louis filled in for Franklin during his absence. Franklin's temporary reassignment to the asbestos department lasted longer than anyone expected. After a year, during which time Louis performed the extra duties of a full locksmith for no additional pay, Louis asked to receive the pay equal to the job he was doing, with the understanding that this extra pay was to continue only until Franklin returned. Prince argues that this was a promotion. The court disagrees.

Prince points out that the net result of Louis's temporary assignment to cover for Franklin is that Louis received over $8000 in additional pay compared to Prince, and that this amounts to a promotion. But when Louis began filling in for Franklin with no additional compensation, this assignment was expected to be temporary, and was not viewed as a promotion by anyone. No one expected that Louis would get a raise at all, only that Louis would temporarily fill in. Louis was clearly the logical one to fill in

8

for Franklin on the interim basis, because Louis was Franklin's assistant in that region of the school district. When Louis was performing these duties for no extra pay, Prince did not then think of it as promotion. It is only a year later, when Louis asked to be compensated for the tasks he was already doing without pay, that Prince voiced objections to the arrangements. By that time it would have been unduly harsh and unreasonable to "reward" Louis for his year of extra work by demoting him, and bringing in Prince, the locksmith helper from the other region, to supervise Louis. The fact that Louis, as a final tally, ended up earning more money than Prince during this period, does not demonstrate that Louis received a promotion. It merely indicates that Franklin's temporary reassignment went on so much longer than anyone expected that it became unreasonable to ask his assistant to cover his tasks any longer without compensation.

Based on these undisputed facts, the court finds either that a promotion did not occur, or that it is highly doubtful that a promotion occurred. Accordingly, the court finds that Prince has not established her *prima facie* case.

Assuming, *arguendo*, that Prince has established her *prima facie* case by evidence that a reasonable factfinder could use to

9

find a promotion of Louis, the court will next consider whether the Board has provided a legitimate, non-discriminatory explanation for its actions.  In fact, this issue has largely been discussed already.  The Board assigned Louis to cover for Franklin because Louis was Franklin's assistant in that geographic area.  A year and a half later, the Board raised Louis's pay to compensate him for the work he was already doing.  The court finds that the Board has provided supremely legitimate, non-discriminatory explanations for its actions.

Prince asserts blandly that the Board's explanations are pretextual.  First, Prince says that she was more qualified than Louis, arguing that this raises the inference of pretext in the Board's employment decisions.  The problem with Prince's argument about qualifications is that she selects different time periods on which to focus depending on the points she wishes to make.  For example, when Prince compares her experience to Louis's, Prince claims that "she had more than two years experience at the time the interim locksmith decision was made."  Prince, purporting to contrast her two years of training to Louis's experience, claims that Louis had only "worked with a certified locksmith for a few months" when the interim locksmith decision was made.  This comparison is clearly apples to oranges and, if it is not

10

deliberately misleading, it is close to being deliberately misleading. There are two points in time when an "interim locksmith decision" was made. The facts relevant to each one are different. The first one occurred in 1995 when Franklin, the locksmith supervising Louis, was temporarily assigned out of locksmith department and into the asbestos the department. At that point (call it the "first interim locksmith decision"), it is true that Louis only had several months training. However, Prince indicates on the chart in her brief that at the time of the "interim locksmith decision" she had "two years experience training with a certified locksmith" and compares it to Louis's "several months of training" as if she is comparing apples to apples. This is false and misleading. Prince had two years training only at the "second interim locksmith decision," that is, the time when the Board agreed to pay Louis for the work he had done on a volunteer basis for over a year. By the time Prince had two years experience, Louis's level of experience had also changed significantly. This is not indicated in any way on Prince's "chart." This apples and oranges comparison of facts presented by Prince is distracting. Slight-of-hand cannot substitute for relevant facts.

The fact is, by the time of the "second interim locksmith

11

decision," Louis had over a year of experience as a locksmith, handling the duties of his entire region without a helper. The court finds that allegations that Prince was more qualified for the position are not accurate, and do not tend to demonstrate that the Board's stated nondiscriminatory explanations for it's actions are pretextual.

Next, Prince argues that her performance evaluation was superior to Louis's and describes this fact as "most revealing." The court again cannot help but notice the attempt to apply facts from one time period and claim relevance in a completely different time period. It is true that the Prince's performance evaluation was moderately better than Louis's in 1995. But this evaluation occurred well before the time that is relevant to this case. Over a year later, when the "second interim locksmith decision" was made, the decision relevant to this suit, the Board had no current performance evaluation to look at at all. What the decision makers knew is simply that Louis had been successfully performing the duties for over a year. The fact that the Board at that time disregarded an earlier set of evaluations does not tend to demonstrate that the Board's stated non-discriminatory explanation for its actions is pretextual.

Third, Prince complains that the Board has a pattern of

decision-making in hiring and promotions that allows it to treat employees unfairly without being held accountable. Prince describes the "time-honored practice of allowing supervisors to arbitrarily select employees for interim positions." Prince points out that this practice "allows supervisors to place employees in positions without giving them the title, all the while avoiding more formal personnel requirements, then when it comes time to decide who is the best qualified for the permanent position, the reason invariably given is because the individual has been performing the job."

    The court finds that Prince's conclusory allegations of such a "time-honored" practice are not supported by evidence. Prince provides a quote from Dr. Shriver's testimony that purports to demonstrate such a practice. But the court finds that this quote from Dr. Shriver's testimony might or might not support Prince's interpretation. Shriver testified that "[y]ou could probably get by with making a person acting, and probably sometimes you can get them paid for doing that job. And we probably couldn't just get a new person appointed." It is a far leap to claim that this short quote demonstrates that it is a "time-honored" practice for the Board to use interim employment techniques to circumvent "more formal personnel requirements." More to the point, however, is

13

that the existence of such a "time-honored" practice, in and of itself, is not enough to support an inference of pretext in this case. Regardless of whether such a practice exists, the existence of such a practice means nothing if Prince cannot show that she was harmed by it. In other words, Prince does not have standing to sue to correct potentially discriminatory practices in general. And in her case, there is no basis at all to conclude that Louis received the interim position of locksmith because the Board used interim hiring techniques to circumvent "more formal personnel requirements." In fact, it is far more likely that such an inference could be drawn if **Prince** had been the one to receive the position instead of Louis. Demoting Louis after his year of volunteering for extra duties would have been so unnatural and illogical that the existence of such a contorted personnel move would, indeed, have raised an inference that the stated reason for the action was pretextual. In other words, Louis might have done better with a Title VII claim under such circumstances than Prince is doing with the true facts.

    Finally, Prince complains that the investigation into Prince's complaint was a sham, and that this raises the inference that the stated reason for hiring Louis was pretextual. Prince argues that Dr. Shriver's investigation included nothing more than a casual

14

conversation with Prince's supervisors asking why Louis received the promotion instead of Prince. The supervisors apparently told Dr. Shriver that they picked Louis because "Mr. Louis had been performing the duties for more than a year and was better qualified."

Again, this court finds that Prince has no standing to sue the Board to correct potentially discriminatory practices in general. Here, all the facts indicate that Louis, in fact, had been performing the duties for over a year and, because of that fact alone, was better qualified. There is no evidence at all that a more "in-depth" investigation by Dr. Shriver would have unearthed anything more than further evidence corroborating the facts. It is true, to be sure, that Dr. Shriver could get himself into trouble some day if an employee is actually injured by his arguably casual and superficial investigatory techniques. But that is not Prince's concern because she, herself, cannot demonstrate that she was injured by Dr. Shriver's techniques. If there is the slightest indication of gender bias, this court cannot detect it and could not let a jury find what has no evidentiary basis. All the facts indicate that Louis was, by virtue of his year on the job, in fact better qualified for this position. The court finds no evidence at all that the Board's stated nondiscriminatory explanations for its

actions are pretextual.

## Conclusion

In light of the foregoing, the court finds that Prince has raised no genuine issue of material fact with respect to her claim of discrimination in employment based on sex. Accordingly, her Title VII claim, as well as her Title IX claim, are due to be dismissed.[3]

DONE this 4th day of August, 2000.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Prince has a second motion before the court to strike portions of the affidavit of Ralph Louis. The court understands Prince's objections, and notes that some of the points are well taken, but believes that the affidavit is largely duplicative and harmless. This court's decision is based on the pertinent and undisputed facts, and relies in no way on Ralph Louis's affidavit. The motion to strike the affidavit of Ralph Louis is due to be denied.